**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roberto AGUILERA–ZAPATA,
Defendant–Appellant.**

No. 89–1279.

United States Court of Appeals,
Fifth Circuit.

May 9, 1990.

---

Thomas S. Morgan (Court-appointed), Midland, Tex., for defendant-appellant.

Philip Police, LeRoy Morgan Jahn, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARZA, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Roberto Aguilera–Zapata (Aguilera) pleaded guilty to possession of over one hundred kilograms of marihuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). In this appeal, Aguilera challenges the district court's enhancement of his offense level, pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines, because of a co-defendant's possession of a loaded revolver during the commission of the offense.

**Facts and Proceedings Below**

Pursuant to a plea agreement, Aguilera pleaded guilty to possession of more than one hundred kilograms of marihuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). In support of this guilty plea, the government offered the following recitation of facts, which was not objected to by Aguilera or his counsel. At approximately 3:00 a.m. on December 3, 1988, United States Border Patrol Agent Leslie Whittington (Agent Whittington) observed a brown 1987 Dodge pickup truck with Mexican license plates coming from the direction of the Rio Grande River in Hudspeth County, Texas, and moving toward his surveillance point. After the truck had passed him, Agent Whittington pulled his vehicle behind the truck and activated his vehicle's overhead flashing lights, signaling for the truck to stop. He followed the truck for approximately five miles before it finally pulled over and stopped. As Agent Whittington approached the truck, a passenger—later identified as "Ernesto"—exited the cabin of the truck and escaped on foot. Agent Whittington, however, arrested Aguilera, who was the driver of the truck, and two others—Manuel Castillo–Mendez (Castillo) and Juan Martinez–Holguin (Martinez)—who had been sitting on approximately 529.5 pounds of marihuana in the enclosed bed of the truck. A pat-down search of Martinez revealed his possession of a loaded revolver.

Agent Whittington questioned the three individuals. He asked Aguilera if there were one thousand pounds of marihuana in the truck, and Aguilera responded that there were only five hundred pounds. Aguilera indicated that he had been hired to drive the truck to the Rio Grande River in order to pick something up but that he was unaware exactly what was to be picked up. Castillo and Martinez admitted that they had loaded the marihuana into the truck in Mexico. Martinez also acknowledged that Ernesto had given him the revolver that was found on Martinez' person at the time of his arrest.

Aguilera, Castillo, and Martinez were indicted on the following three counts: possession of more than one hundred kilograms of marihuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1); conspiracy to do so, in violation of 21 U.S.C. §§ 841(a)(1), 846; and carrying a firearm during and in relation to the commission of a narcotics trafficking crime, in violation of 18 U.S.C. § 924(c)(1). The district court accepted Aguilera's guilty plea to the marihuana possession with intent to distribute count and subsequently dismissed the conspiracy and firearm possession counts as to him on motion of the government.[1]

The United States Probation Office prepared a presentence investigation report

---

1. The court also accepted the guilty pleas of Martinez and Castillo to the conspiracy count.

(PSI), recommending that the district court increase Aguilera's base offense level by two levels, pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines, because of the possession and presence of a firearm during the commission of the marihuana trafficking offense. This produced a guideline confinement range of sixty-three to seventy-eight months; without the two-point enhancement under section 2D1.-1(b)(1), the range would have been fifty-one to sixty-three months. Objecting to that recommendation, Aguilera's counsel emphasized that Aguilera had no knowledge of Martinez' possession of a firearm. The probation officer responded that section 2D1.1(b)(1) does not indicate that it applies only if a defendant were aware of a co-defendant's possession of a weapon during the commission of a narcotics trafficking offense.

At the sentencing hearing, Aguilera's counsel emphasized that, prior to Aguilera's arrest, "[h]e had not known the two people in the camper" and he "never touched a firearm, never possessed a firearm, never even knew who these two men were," and "had no idea there was a firearm, it was a total surprise to him." [2] According to Aguilera's counsel, Ernesto offered Aguilera three hundred dollars for simply driving the truck, and Aguilera stayed in the cabin of the truck as the marihuana was loaded into its enclosed camper bed. Finally, Aguilera's counsel noted that, pursuant to the plea agreement, the conspiracy and firearm possession counts were to be dismissed as to Aguilera.

The district court responded that, regardless of Aguilera's having pleaded guilty only to the marihuana possession count and his allegedly not knowing of Martinez' possession of a handgun, "the fact that he may or may not have known about a gun, the fact remains there was a gun present. And the Guidelines enhance the penalty if

there is a gun present. They don't say whether you know or didn't know it.... The fact that there was a gun present there at the pickup, where somebody could have used it, I believe, is sufficient reason" to enhance Aguilera's sentence under section 2D1.1(b)(1). Adopting the PSI's recommendation for a guideline confinement range of sixty-three to seventy-eight months, the court sentenced Aguilera to sixty-three months' imprisonment followed by four years of supervised release and imposed a fifty dollar special assessment. This appeal followed.

### Discussion

Aguilera primarily contends that, because of his lack of knowledge of Martinez' possession of the loaded revolver while they transported marihuana with the intent to distribute it, the district court erred in enhancing Aguilera's base offense level, pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines. Aguilera presents a case of first impression in this Court as to whether or under what circumstances section 2D1.1(b)(1) may be applied to a defendant who was not aware of a co-defendant's possession of a firearm during a narcotics trafficking offense.

As in effect at the time of Aguilera's marihuana possession offense, section 2D1.1(b)(1) directed sentencing courts to increase by two levels the base offense level of a defendant convicted of certain narcotics-related offenses (including possession with intent to distribute) "[i]f a firearm or other dangerous weapon was possessed during commission of the offense." Application Note 3 to section 2D1.1 states:

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it

2. In oral argument to this Court, Aguilera's counsel asserted that he claimed below that Aguilera did not know there was anyone in the camper portion of the pickup until he was arrested. The record does not reflect that any such contention was made below. It is clear that what was said was that Aguilera did not

know who the men in the camper were. This is confirmed by the only statement on the subject in Aguilera's written objection to the PSI, namely, "there is nothing in the reports that indicate that Roberto Aguilera–Zapata knew who the co-defendants were until the arrest."

is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."

*See also United States v. Hewin,* 877 F.2d 3, 5 (5th Cir.1989) (proof of connection of defendant's firearm possession with underlying narcotics trafficking offense sufficient to convict for independent firearm offense under 18 U.S.C. § 924(c) is not necessary for application of section 2D1.1(b) to defendant). *Cf. United States v. Vasquez,* 874 F.2d 250, 251 (5th Cir.1989) (loaded pistol seized from defendant's apartment not connected with his prior purchase of cocaine that never reached his apartment, which was several miles away from location of purchase). Here, Aguilera does not contend that it is "clearly improbable" that the loaded revolver found on Martinez' person was connected with the marihuana possession offense. Aguilera simply contends that enhancement is not justified because he did not know of Martinez' firearm possession.

 Section 1B1.3(a)(1) of the Sentencing Guidelines directs sentencing courts, in determining whether to apply a specific offense characteristic, such as section 2D1.1(b)(1), to a particular defendant, to consider the following relevant conduct:

"[A]ll acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense."

As in effect at the time of the offense in question, Application Note 1 to section 1B1.3 stated:

"Conduct 'for which the defendant is otherwise accountable,' as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (*Cf.* 18 U.S.C. § 2.) If the conviction is for con-

spiracy, it includes conduct in furtherance of the conspiracy that was known to or was *reasonably foreseeable* by the defendant." (Emphasis added).

Because Aguilera was not convicted of conspiracy, former Application Note 1 might arguably suggest that he should not be held accountable for accomplices' conduct, such as Martinez' possession of a revolver. This application note, however, was amended, effective November 1, 1989, stating:

"Conduct 'for which the defendant would be otherwise accountable,' as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (*Cf.* 18 U.S.C. § 2.) In the case of criminal activity undertaken in concert with others, *whether or not charged as a conspiracy,* the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the *jointly-undertaken* criminal activity that was *reasonably foreseeable* by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant's agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline." (Emphasis added.)

"The purpose of this amendment is to *clarify* the guideline and commentary." U.S. Sentencing Comm'n, *Guidelines Manual* app. C, at C. 43 (Nov.1989) (emphasis added). Because this amendment was intended only to clarify section 1B1.3's application and, therefore, implicitly was not intended to make any substantive changes to it or its commentary, we may consider the amended language of Application Note 1 to section 1B1.3 even though it was not effective at the time of the commission of the

offense in question. We conclude that although the district court dismissed the conspiracy count against Aguilera, the court was nevertheless justified in considering for purposes of section 2D1.1(b)(1) any foreseeable conduct of Martinez (or the other participants) in furtherance of their jointly undertaken criminal activity.[3] We observe that our interpretation of section 1B1.3 in this respect is the same as that in *United States v. White*, 875 F.2d 427, 433 (4th Cir.1989) (opinion by Judge Wilkins, Chairman of the United States Sentencing Commission), which likewise dealt with an offense committed before the referenced amendment to Application Note 1 to section 1B1.3.

Aguilera relies on *United States v. Burke*, 888 F.2d 862 (D.C.Cir.1989), for the proposition that sentencing courts cannot enhance a defendant's sentence under section 2D1.1(b)(1) absent a showing of scienter. *See id.* at 865–66 (accepting government's concession that section 2D1.-1(b)(1) should not be read to apply absent scienter). More specifically, "the sentencing judge should upgrade the sentence of a drug defendant who possessed a dangerous weapon or firearm whenever it is found that the defendant possessed it 'intentionally, recklessly or by criminal negligence.'" *Id.* at 867 (quoting section 1B1.3(a)(3) of the Sentencing Guidelines).[4] The court in *Burke* "recognize[d] that this standard is more liberal than that used in the criminal offense of firearms possession, which requires proof that the defendant knew that he was in possession of a firearm." *Id.* at 868; *see id.* at 866–67 & n. 7; *see also Hewin*, 877 F.2d at 5 (defendant's firearm possession during narcotics trafficking offense need not be sufficient to convict under 18 U.S.C. § 924(c) in order for section 2D1.1(b) to be applied to defendant).

The court in *Burke* addressed the relevant culpability requirement for the application of section 2D1.1(b)(1) to a defendant who personally possesses a firearm during a narcotics trafficking offense, but the issue in the present case concerns section 2D1.1(b)(1)'s application to a defendant because of a co-defendant's knowing firearm possession during such an offense. Indeed, the court in *Burke* noted the distinct factual situation in *White*, where the Fourth Circuit applied complicity principles

---

**3.** In *United States v. Missick*, 875 F.2d 1294 (7th Cir.1989), the court held that the sentence of a defendant, who had been convicted of conspiracy to import cocaine and possession of cocaine with the intent to distribute it, could not be enhanced under section 2D1.1(b)(1) because of the possession of weapons by co-defendants, who had received the fruits of the defendant's importation. The court in *Missick* emphasized that the co-defendants had not been charged as participants in the conspiracy to import cocaine. *See id.* at 1302.

The facts in *Missick*, which was handed down before the mentioned amendments to Application Note 1, are materially different from those in the present case. The co-defendants in *Missick* were charged only with carrying a firearm during the commission of a narcotics trafficking offense. They were not charged with conspiracy to import cocaine. *See Missick*, 875 F.2d at 1302. In the present case, both Castillo and Martinez were charged with and pleaded guilty to conspiracy to possess marihuana with the intent to distribute it. Aguilera, on the other hand, pleaded guilty to the substantive marihuana possession with intent to distribute count. Although the court dismissed the conspiracy count as to Aguilera on the government's motion, it is clear from the government's recitation of facts at the plea hearing that Aguilera's mari-

huana possession occurred during jointly undertaken narcotics trafficking activity. Further, the weapons' possession by the co-defendants in *Missick* did not occur in the defendant's presence. The co-defendants were arrested as they purchased cocaine from a middleman in Indiana, who was cooperating with law enforcement officers and had purchased the cocaine from the defendant in the Bahamas. The co-defendants were carrying weapons at that time. Approximately two months later, the middleman enticed the defendant to come to Indiana and to bring some more cocaine, and the officers then arrested the defendant. *See Missick*, 875 F.2d at 1296–97. In the present case, almost 530 pounds of marihuana were seized from a pickup truck. Aguilera was the driver of the truck, and Martinez was a passenger in its enclosed bed. At the time of their arrest, a loaded revolver was found on Martinez' person. Martinez represented that he had received the revolver from Ernesto, a passenger in the cabin of the truck.

**4.** Section 1B1.3 was amended, effective November 1, 1989, by "delet[ing] reference to harm committed 'intentionally, recklessly, or by criminal negligence' as unnecessary and potentially confusing." U.S. Sentencing Comm'n, *supra*, app. C, at C.41.

in order to enhance a defendant's sentence under section 2D1.1(b)(1) because of a weapon found under the co-defendant's car seat. *See Burke*, 888 F.2d at 868 n. 9 (discussing *White*, 875 F.2d at 433). In light of this complicity analysis in *White*, the court in *Burke* found no inconsistency between its holding and that in *White*. *See id.*

In *White*, the defendant was picked up by the co-defendant at a train station in January 1988. Law enforcement officers arrested them as they attempted to drive away in the co-defendant's car. The officers found over three hundred grams of cocaine in the defendant's jacket pocket and a loaded pistol under the co-defendant's car seat. The two defendants were charged in a four-count indictment, including a charge of conspiring to traffic in cocaine, in violation of 21 U.S.C. § 846. Both pleaded guilty to possession of cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and the co-defendant also pleaded guilty to possession of a firearm during the commission of a narcotics trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The defendant did not plead guilty to and was not convicted of any conspiracy. *See White*, 875 F.2d at 429, 433.

The defendant in *White* contended that the district court erred in enhancing his sentence under section 2D1.1(b)(1) because he did not physically possess the weapon discovered under the co-defendant's seat in the co-defendant's car. The defendant emphasized that he pleaded guilty only to aiding and abetting the possession of cocaine with the intent to distribute it, *not to conspiracy to do so*. *See id.* at 433.

The court in *White* rejected the defendant's contention. Concluding that, "under the circumstances of the case, it was fair to say that it was *reasonably foreseeable* " that the co-defendant was or would be in possession of a firearm, the court held that, "under Guideline § 1B1.3(a)(1), [the defendant] is 'otherwise accountable' for the weapon." *Id.* (emphasis added). *Cf. United States v. Baker*, 894 F.2d 1334 (5th Cir.1990) (unpublished) (enhancement of defendant's sentence under section 2B3.-1(b)(2)(C) of Sentencing Guidelines due to accomplice's use of crowbar in robbery not clearly erroneous because defendant, who drove accomplice to scene of crime and subsequently pleaded guilty to aiding and abetting robbery, was accountable for accomplice's actions even though defendant neither knew of crowbar nor was physically present when accomplice used it). *White* noted that the pistol under the co-defendant's car seat was readily accessible to both of them and that both were acting in concert with respect to the underlying narcotics offense. *Id.*, 875 F.2d at 433.

In light of section 1B1.3(a)(1) and its commentary, we agree with *White* that sentencing courts may hold a defendant accountable for a co-defendant's reasonably foreseeable possession of a firearm during the commission of a narcotics trafficking offense, pursuant to section 2D1.1(b)(1). *Accord United States v. Williams*, 894 F.2d 208, 211–12 (6th Cir.1990). The burden of proof in this respect is on the government under a preponderance of the evidence standard. *See Burke*, 888 F.2d at 869 ("[I]nsofar as section 2D1.1(b) ... would enhance the defendant's sentence, the burden of proof is on the prosecution to satisfy the factual prerequisites of the provision" by a preponderance of the evidence.). However, as the court in *White* noted and this Court has repeatedly observed, "firearms are 'tools of the trade' of those engaged in illegal drug activities." *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987); *see White*, 875 F.2d at 433. Sentencing courts, therefore, may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support an inference of intent to distrib-

ute.[5] Even where the government has thus established a basis for such an inference, the sentencing court ultimately may decline to find reasonable foreseeability in light of special circumstances or contrary evidence presented by the defendant in rebuttal.

▮ Aguilera's counsel has asserted on appeal that the district court enhanced Aguilera's sentence, pursuant to section 2D1.1(b)(1), without making any specific finding as to reasonable foreseeability.

The facts here provide ample support for concluding that Aguilera should have reasonably foreseen Martinez' possession of the revolver. It is undisputed that Aguilera was the driver of the truck carrying almost 530 pounds of marihuana and that Martinez was a passenger in the enclosed bed of the truck and then knowingly possessed a loaded revolver. *See, e.g., United States v. Ayala,* 887 F.2d 62, 68 & n. 8 (5th Cir.1989) (intent to distribute inferable from constructive possession of one hundred pounds of marihuana). Notwithstanding the court's dismissal of the conspiracy count in accord with Aguilera's plea agreement, the facts also clearly indicate that Aguilera acted in concert with Martinez and the others in committing the underlying marihuana trafficking offense. *See White,* 875 F.2d at 433.

The district court enhanced Aguilera's sentence, pursuant to section 2D1.1(b)(1), because of the mere presence of a firearm possessed by Martinez during the commission of the narcotics trafficking offense.

The district court did not, expressly or impliedly, find whether or not Aguilera should have reasonably foreseen Martinez' possession of the revolver. In determining whether a district court has properly applied the sentencing guidelines, we "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). In the present case, however, we cannot say that the district court based its enhancement of Aguilera's sentence on the reasonable foreseeability to Aguilera of a firearm or other dangerous weapon, particularly as this Court had not previously enunciated such a requirement and the district court's remarks at sentencing indicate that it felt Martinez' knowing possession of itself was all that was required. We accordingly remand for such a finding.[6]

For the foregoing reasons, we remand for a finding as to whether possession of a dangerous weapon, such as a revolver, by Martinez (or Castillo or "Ernesto") during the jointly undertaken marihuana trafficking offense, was reasonably foreseeable to Aguilera.[7]

REMANDED.

---

**5.** Of course, other circumstances may also warrant such an inference.

**6.** Aguilera also contends that the district court's enhancement of his sentence under section 2D1.1(b)(1), notwithstanding his not actually knowing that Martinez possessed a firearm, violates Aguilera's rights to due process under the Fifth Amendment and the prohibition against cruel and unusual punishment of the Eighth Amendment. The government persuasively responds that the application of complicity principles in sentencing does not violate either of these provisions. *See Watts v. Bonneville,* 879 F.2d 685, 687–88 (9th Cir.1989) (due process); *Reddix v. Thigpen,* 728 F.2d 705, 709, 711 (5th Cir.) (cruel and unusual punishment), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331

(1984), *appeal on other grounds after remand,* 805 F.2d 506 (5th Cir.1986). Aguilera's sentence, of course, was well within the statutory maximum (and only three months in excess of the statutory minimum) for the offense to which he pleaded guilty and was convicted of. We conclude that Aguilera's constitutional arguments are without merit.

**7.** If the court finds that such was reasonably foreseeable, Aguilera's sentence shall stand. Otherwise, the court shall resentence Aguilera on the basis of a guideline range of fifty-one to sixty-three months' confinement, the appropriate range without offense level enhancement under section 2D1.1(b)(1). *See* 18 U.S.C. § 3742(f)(1).