UNITED STATES of America

v.

James J. GUADAGNO.

No. 90 CR 51.

United States District Court, N.D. Illinois, E.D.

May 21, 1991.

Sheila Finnegan, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Joseph R. Lopez, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Defendant James Guadagno was indicted on charges of arson, mail fraud and obstruction of justice in connection with a fire that destroyed defendant Guadagno's liquor store in April, 1988. On September 20, 1990, a jury found defendant Guadagno guilty of arson and mail fraud and not guilty of obstruction of justice. The court referred the case to the probation department for a presentence investigation. Both the government and the defendant filed objections to the probation department's presentence report and on March 29, 1991, the court heard oral argument regarding these objections. The court will now rule on the parties' objections.

### Acceptance of Responsibility

Under Guidelines § 3E1.1(a), an offense level should be reduced by two points "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." In the case at bar, the probation officer found that Mr. Guadagno had expressed "affirmative acceptance of responsibility for his conduct" and accordingly recommended reducing his offense level by two points. The government objects to a two-point reduction in defendant's offense level because the government contends that defendant has not accepted responsibility for all his acts. Furthermore, the government argues that Mr. Guadagno's acceptance of responsibility occurred too late to warrant an offense level reduction. The court agrees.

Defendant drafted two written statements regarding his version of the incident. Neither of these statements conclusively shows that defendant accepts full responsibility for his actions. In his first written statement, defendant apologizes to the owners of the property for the "needless destruction," indicating that he is taking responsibility for setting the fire. However, defendant makes no reference to his involvement in any mail fraud, even though the jury found him guilty on all three counts of mail fraud. Moreover, in his first statement defendant refers to the fire as a "needless mistake that happened to him," rather than affirmatively admitting that he caused the fire. In his second statement, defendant devotes the majority of his letter to attempting to justify his actions by detailing how badly he was treated by the Spalla family. He states that the Spallas are just as guilty as he is and that he was pushed into the situation.

In the last sentence of his second statement defendant does say that he takes "total responsibility" for the fire. However, it seems this statement is belied by the rest of his letter.

Furthermore, even if defendant were more unequivocal about accepting responsibility in his letters, the court would still be reluctant to find the letters sufficient to warrant a two-point reduction in defendant's offense level because they were written so late in the proceedings. Defendant's first statement was written after he had been indicted, tried and convicted of arson and mail fraud. Defendant's second statement was written after the government had filed its objection to the probation department's suggested offense level reduction for acceptance of responsibility. Both the case law and the Guidelines' Application Notes suggest that acceptance of responsibility at this point is too late to warrant an offense level reduction.

In *United States v. Franklin*, 902 F.2d 501, 505–06 (7th Cir.1990), the Seventh Circuit upheld the district court's decision that defendant was not entitled to a two-point reduction in his offense level for acceptance of responsibility because his acceptance was untimely. In *Franklin*, the defendant did not accept responsibility until after "he was charged, pleaded guilty, and the government accumulated proof against him." *Id.* The Seventh Circuit stated that "[w]e cannot say that the district judge had no foundation on which to conclude that [defendant's] guilty plea and truthful admissions arose more from [defendant's] practical concern to lessen his punishment than from any true remorse for his crimes." *Id.* Similarly, the court believes that defendant Guadagno's motivation for writing the letters, especially the letter written after the government submitted its objection to the presentence report, stemmed, at least in part, from a "practical concern to lessen his punishment" rather than from pure remorse.

The Guidelines' Application Notes also support a finding that defendant Guadagno's attempt to accept responsibility comes too late. Note 1(g) to § 3E1.1 provides

that "[i]n determining whether a defendant qualifies for [a reduction for acceptance of responsibility], appropriate considerations include ... (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." Note 2 goes on to state that:

> [t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

The government argues that because defendant went to trial on issues relating to factual guilt and because there are no pretrial statements showing defendant accepted responsibility, defendant should not receive a two-point reduction.

▪ Defendant responds that because Application Note 2 did not go into effect until November 1, 1990, after defendant committed the offenses, the use of this Application Note against defendant Guadagno would constitute a violation of the *ex post facto* clause of the Constitution. The court disagrees. Revised Application Note 2 does not substantively change the operation of § 3E1.1, but instead merely clarifies the provision. *See United States Sentencing Commission Guidelines Manual*, Appendix C, No. 351 (provides that amendment to commentary to acceptance guideline clarifies the operation of this guideline). *See also, United States v. Aguilera-Zapata*, 901 F.2d 1209, 1213 (5th Cir.1990)

(because amendment to commentary was intended to clarify guideline's application and was not meant to substantively change the commentary or the guideline the court can consider amendment, even though it was not in effect at the time of the commission of the offense).

Revised Application Note 2 does not preclude a defendant who exercises his constitutional right to go to trial from getting a two-point reduction for acceptance of responsibility. It merely provides that a defendant who goes to trial normally will have difficulty proving acceptance of responsibility, unless the defendant went to trial to challenge the constitutionality of a statute or to challenge whether the statute applied to his conduct. The original Application Note 2, which was in effect at the time defendant committed the offenses, also stated that defendants who go to trial on issues not relating to factual guilt are those most likely to be able to show acceptance of responsibility. While the original Application Note 2 stated that "[c]onviction by trial does not preclude a defendant from consideration under this section," it still required that defendant be able to show "sincere contrition." Given the lack of clarity of defendant's letters and the tardiness of his decision to try to show acceptance of responsibility, the court finds that defendant has not shown "sincere contrition." Thus, under both the original and the revised Application Note 2 to § 3E1.1, the court declines to reduce defendant's offense level by two points for acceptance of responsibility.

### Increase of Base Offense Level for Count I

■ According to Guideline § 2K1.4, the base offense level for the offense of arson is 6. The probation department found that defendant recklessly endangered the safety of another and therefore the probation officer, pursuant to § 2K1.4(b)(2), recommended increasing defendant's base offense level by 14 points. Defendant objects to such a large increase in the base offense level for Count I. Defendant contends that the evidence does not support a finding of reckless endangerment because the store is not adjacent to any residential property. The defendant further argues that he took steps to insure the safety of others, such as closing the store early and instructing his employees to leave the premises.

The court finds that despite defendant's contentions, there is sufficient evidence to warrant a 14 point increase in the base offense level for Count I. Although defendant closed the store early to clear the building before setting the fire, he did not wait very long after closing before he started the fire. The store was normally open until 11:00 p.m. and defendant started the fire at 11:02 p.m. Although none of defendant's employees was present, last-minute customers, expecting the store to be open until 11:00 p.m., may have come to the store and gotten injured. Moreover, there was a phone outside the store and Rose Herron testified at trial that she had just finished using the phone about a minute before the explosion.

Not only did defendant's conduct recklessly endanger possible shoppers and pedestrians using the phone, but it also endangered the lives of the firefighters sent to put out the fire. The entire back wall of the store was blown out and flammable liquids had been poured throughout the area. Furthermore, there was evidence that defendant left the doors of his coolers open to provide more oxygen for the fire. The aforementioned evidence indicates that defendant intended to create a major fire which, by definition, would endanger the lives of the firefighters who were on the scene. In sum, because of the danger defendant created for shoppers, pedestrians and firefighters, the court finds that a 14 point increase of the base offense level for Count I is warranted.

### Grouping of Arson and Mail Fraud Counts

Section 3D1.2(b) of the Guidelines provides, in pertinent part:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve sub-

stantially the same harm within the meaning of this rule:

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

Both the probation department and the government have taken the position that the arson and mail fraud counts should not be grouped under this section of the Guidelines. Defendant maintains that the arson and mail fraud counts should be grouped because the counts involve the same harm and the same victims.

■ Although the court agrees with defendant Guadagno that the arson and mail fraud were both part of a common plan, the court disagrees that the two offenses involved the same victims. The victim of the arson was the public at large (shoppers, pedestrians, and firefighters). However, the victim of the mail fraud was the insurance company defendant attempted to defraud. For this reason, the court agrees with the government and the probation department that the arson and mail fraud counts should not be grouped.

### Obstruction of Justice

■ Section 3C1.1 of the Guidelines states that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The probation department recommended that defendant's offense level be increased by 2 points because "the defendant obstructed justice by lying to the federal agent who

interviewed him during the investigation of the instant offense." Presentence Report at 3–4. The government also recommends a 2–point increase in the offense level because, regardless of whether defendant lied to a federal agent, he instructed witnesses to lie to federal agents and to the grand jury about the arson. The court finds that under Application Note 4(b) to § 3C1.1, the court cannot increase defendant's offense level based on the fact that he lied to a federal agent because there is neither evidence that defendant was under oath nor that his statements "significantly" impeded the investigation. However, the more difficult question is whether defendant's offense level can be increased based on the evidence that he instructed other witnesses to lie to federal investigators and to the grand jury.[1]

Defendant maintains that the court cannot use the evidence of obstruction of justice to increase defendant's offense level for the charges upon which he was convicted because defendant was charged with obstruction of justice and the jury acquitted him. Defendant contends that using the obstruction evidence would violate the Double Jeopardy Clause and the Due Process Clause of the Constitution. A number of circuit courts have addressed this very issue and found that it is not unconstitutional for courts to consider facts from counts upon which a defendant was acquitted to enhance the sentence for counts upon which a defendant was convicted, if the facts can be shown by a preponderance of the evidence. *See United States v. Rodriguez–Gonzales*, 899 F.2d 177, 180–81 (2d Cir.1990); *United States v. Fonner*, 920 F.2d 1330, 1332–33 (7th Cir.1990); *United States v. Dawn*, 897 F.2d 1444, 1449–50

1. The court notes that although the jury found that the government did not prove beyond a reasonable doubt that defendant obstructed justice by instructing witnesses to lie, there was sufficient evidence at trial to meet a preponderance of the evidence standard. Rich Bargas, Laurie Schillaci and Jean Castellano all testified that defendant Guadagno instructed them to lie to federal agents and to the grand jury. Rich Bargas testified that he felt physically threatened by defendant Guadagno. Jean Castellano testified that she lied to the grand jury because she heard defendant Guadagno say that he was going to kill two stock boys who were witnesses against him. The witnesses' testimony is further corroborated by the fact that they did give similar false testimony to the grand jury, indicating that someone was coordinating their testimony. Defendant Guadagno was the only person with a motive to coordinate false testimony. For these reasons, the court finds that the government did show, by a preponderance of evidence, that defendant Guadagno obstructed the investigation of the arson for which he was indicted.

(8th Cir.1990); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Ryan,* 866 F.2d 604, 608–09 (3d Cir.1989); *United States v. Isom,* 886 F.2d 736 (4th Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir. 1989); *But see, United States v. Brady,* 928 F.2d 844 (9th Cir.1991) (held that court could not use evidence relating to a charge upon which defendant had been acquitted to support an upward departure on sentence for count upon which defendant had been convicted because it would "pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted").

The courts which have found that it is not unconstitutional to use facts from a charge upon which defendant was acquitted to enhance the sentence for a count upon which defendant was convicted have all used similar reasoning. The courts noted that a district court has wide discretion in determining what evidence should be used to calculate a sentence. The courts also stated that before the Guidelines existed, district courts were allowed to use facts proven by a preponderance of the evidence to determine a sentence, even if the facts related to a count upon which the defendant had been acquitted. The courts found that there is nothing explicit in the Guidelines that shows that the use of such evidence is now forbidden. As to the issue of double jeopardy, the courts held that using such evidence in sentencing is not a violation of the Double Jeopardy Clause because the defendant is not being sentenced for any charge of which he was acquitted. Instead, his sentence for the charge upon which he was convicted is being enhanced based upon the relevant facts which are shown by a preponderance of the evidence. The courts also found that use of such evidence does not violate the Due Process Clause because due process only requires that the court base its sentence on facts shown by a preponderance of the evidence. Furthermore, the courts noted that an acquittal is not a determination of innocence—it simply means that the government did not prove its case beyond a reasonable doubt.

While the court agrees with the circuit courts that neither the Guidelines nor the Constitution prohibits the obstruction evidence to be used to enhance defendant's offense level in the case at bar, the court is still troubled by the seeming unfairness of using evidence of an offense of which defendant denied guilt and of which he was acquitted to enhance his sentence. Defendant never admitted that he instructed anyone to lie to the federal investigators or the grand jury. In contrast, in *Fonner, supra.,* the fact relied upon by the district court to enhance the defendant's sentence was not disputed by the defendant. In *Fonner,* the district court relied upon the fact that defendant had killed a state police officer in 1972 to enhance his sentence for mailing threats to a Commander of the Illinois State Police and a federal district court judge. The court found that the fact that defendant had killed someone in the past added to the seriousness of the threat of the letters. The court considered this killing, even though the defendant was charged with murder in connection with the killing and was tried and acquitted. Apparently, the jury accepted defendant's contention that he acted in self-defense. However, what is significant is that the defendant did not dispute the fact that the district court took into account—that he killed the police officer. The only dispute was over whether the killing was legally justified.

Similarly, in *United States v. Mocciola, supra.,* the district court relied upon a fact which the defendant did not dispute to enhance his sentence. In *Mocciola,* the defendant was indicted for drug trafficking and for using a firearm in relation to drug trafficking charge. The defendant pled guilty to the drug charges and went to trial and was acquitted on the weapons charge. Despite the fact that the jury acquitted the defendant of the weapons charge, the court added a two-point enhancement to defendant's sentence for the possession of a weapon. However, what the court again finds significant is that the defendant did not dispute having a gun. He just disputed whether he was using it in connection with

his drug activity. In contrast, Mr. Guadagno never admitted to any of the underlying facts in the obstruction charge.

In sum, while the court realizes that it could, under the law, increase defendant's offense level by 2 points based on the evidence of obstruction presented at trial, the court declines to do so because the defendant denied the obstruction charge and because he was acquitted by the jury on that charge.

### Conclusion

For the aforementioned reasons, the court will not decrease defendant's offense level by 2 points for acceptance of responsibility. The court increases defendant's base offense level for Count I by 14 points because there was sufficient evidence of reckless endangerment. The arson and mail fraud counts are not grouped. The court will not increase defendant's offense level by 2 points based on evidence that defendant obstructed justice. Based on these rulings, the court calculates that defendant's total offense level is 21, his criminal history category is I and his Guidelines' range of imprisonment is 37 to 46 months.