**UNITED STATES of America**

v.

**Jeffrey SERGIO.**

**No. SCr. 89–41.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 12, 1990.

Thomas O. Plouff, Barbara Z. Brook, Asst. U.S. Attys., South Bend, Ind., for plaintiff.

James F. Korpal, South Bend, Ind., for defendant.

## SENTENCING MEMORANDUM

MILLER, District Judge.

On February 2, 1990, a jury found Jeffrey Sergio, aged 21, guilty of one count of conspiracy to distribute more than 500 grams of cocaine, 21 U.S.C. § 846, and

fourteen counts of possession with intent to distribute cocaine. 21 U.S.C. § 841(a)(1). Count 1 is punishable by imprisonment for not more than forty years and a fine of as much as $2,000,000.00. 21 U.S.C. § 841(b)(1)(B)(ii). Each of the remaining counts is punishable by imprisonment for as long as twenty years and a fine of not more than $1,000,000.00. 21 U.S.C. § 841(b)(1)(C). Mr. Sergio also faces a mandatory term of supervised release for at least three years on each substantive count, 21 U.S.C. § 841(b)(1)(C), and a mandatory special assessment of $50.00 on each count. 18 U.S.C. § 3013. Because each offense was committed before November, 1988 and carries a possible term of imprisonment of twenty years or more, probation is prohibited by 18 U.S.C. § 3561(a)(1).

## I. APPLICABILITY OF THE SENTENCING GUIDELINES

■ The conspiracy of which Mr. Sergio was found to be a member existed from August, 1987 through July, 1988. Accordingly, sentencing on Count 1 is controlled by the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984, even though the conspiracy began before the Guidelines' November 1, 1987 effective date. *United States v. Tharp*, 892 F.2d 691 (8th Cir.1989); *United States v. Story*, 891 F.2d 988 (2nd Cir.1989). The offenses charged in Counts 9, 10, 12, 13, 15, 17, 19, 21, and 24 occurred on or after November 1, 1987; accordingly, the Sentencing Guidelines apply to those offenses as well, *United States v. Johnson*, 889 F.2d 1032 (11th Cir.1989); *United States v. Miller*, 874 F.2d 466, 467 n. 1 (7th Cir.1989), as do the clarifying amendments to the Guidelines. *United States v. Smith*, 887 F.2d 104 (6th Cir.1989). As a practical matter, however, the conspiracy sentence will be concurrent with the sentences for the substantive acts. *United States v. Watford*, 894 F.2d 665, 668 (4th Cir.1990) (Wilkins, J.).

■ The Guidelines do not apply to Counts 2, 3, 4, 6, and 7 because those offenses occurred before November 1, 1987. *United States v. King*, 895 F.2d 205 (5th Cir.1990); *United States v. Bogden*, 865 F.2d 124, 129 (7th Cir.1988), *cert. denied* — U.S. —, 109 S.Ct. 1652, 104 L.Ed.2d 166 (1989); *United States v. Stewart*, 865 F.2d 115, 118 (7th Cir.1988). Neither the government nor Mr. Sergio have argued for consideration of differing factors with respect to the Guideline and non-Guideline counts. In response to the court's inquiry at the commencement of the sentencing hearing, counsel for both sides agreed that concurrent sentences equal to those imposed on the remaining counts should be imposed on the non-Guideline counts.

## II. RESOLUTION OF OBJECTIONS; DETERMINATION OF SENTENCING RANGE

A presentence investigation report was prepared in this case. Each party lodged objections to that report, requiring resolution by the court. Mr. Sergio challenges the computation of the base offense level, contending that he should not be held responsible for the quantities of cocaine on which the probation officer proposed the offense level be based. The government objects to the probation officer's recommendation that no enhancement be made for obstruction of justice. Finally, Mr. Sergio argues that the Guidelines should not be employed in a way that would create disparity between his sentence and the sentences given his confederates. The court addresses each objection in turn.

### A. Base Offense Level; Relevant Conduct

■ The first step in determining a sentence under the Guidelines is to determine the base offense level corresponding to the statutes of conviction. *United States v. Diaz–Villafane*, 874 F.2d 43, 46 (1st Cir.), *cert. denied* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The parties dispute the base offense level.

Determination of the base offense level for conspiracy begins with United States Sentencing Guideline ("U.S.S.G.") § 2D1.4, which, in the case of a drug offense, refers

the court to U.S.S.G. § 2D1.1(a)(3), which in turn sets forth a table by which offense levels are governed by the type and quantity of drugs involved. The substantive offenses of which Mr. Sergio was convicted involved 539 grams of cocaine. The government contends that the conspiracy involved the delivery of at least another 2,296 grams of cocaine. Mr. Sergio contends that he cannot be held responsible for that additional quantity.

■ The law and evidence favor the government on this issue. Drug conspirators are to be sentenced on the basis of all transactions that were known to the defendant or were reasonably foreseeable. U.S. S.G. § 1B1.3; *United States v. Savage*, 891 F.2d 145 (7th Cir.1989). Unindicted conduct may be considered in determining the offense level, *United States v. Fox*, 889 F.2d 357 (1st Cir.1989), if it is part of the same course of conduct or common scheme or plan as the offenses of conviction. *United States v. Salva*, 894 F.2d 225, 230 (7th Cir.1990); *United States v. Vopravil*, 891 F.2d 155 (7th Cir.1989); *United States v. White*, 888 F.2d 490 (7th Cir.1989). The sentencing judge must determine the quantity of drugs involved, *United States v. Savage*, 891 F.2d at 151, and the government bears the burden of proving that quantity by a preponderance of the evidence. *United States v. Casto*, 889 F.2d 562, 569–570 (5th Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990). The court must have some evidentiary basis for making its determination, *United States v. Smith*, 887 F.2d 104 (6th Cir.1989), which may be provided by the evidence introduced at trial. *United States v. Barrett*, 890 F.2d 855 (6th Cir. 1989); *United States v. Monzon*, 869 F.2d 338, 346–347 (7th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) (pre-Guidelines).

■ Evidence introduced at Mr. Sergio's trial is more than sufficient to establish, by a preponderance of the evidence, that the conspiracy of which Mr. Sergio was a part handled at least 100 ounces of cocaine, including the cocaine upon which the substantive charges against Mr. Sergio were based. Steven Birnberg supplied the conspiracy's cocaine to Scott Gallagher and Andrew Cordischi, who then distributed the cocaine to others, including Mr. Sergio. Trial evidence established that Birnberg shipped cocaine to Gallagher in four-ounce quantities on fourteen occasions and provided Gallagher an additional four ounces at the outset of the conspiracy. Cordischi testified to receipt of at least forty (and as much as 120) ounces of cocaine from Birnberg. Other trial evidence suggested additional quantities, but the court agrees with the government that it has shown that at least 100 ounces (2,835 grams) of cocaine were involved.

The court must also find that the conduct of his co-conspirators was conduct for which Mr. Sergio "would be otherwise accountable". U.S.S.G. § 1B1.3. One court has suggested that this language evokes the "*Pinkerton* doctrine" under which conspirators may be criminally responsible for the acts of their confederates, *United States v. LaFraugh*, 893 F.2d 314, 317 (11th Cir.1990); *but see United States v. O'Meara*, 895 F.2d 1216, 1221 (8th Cir. 1990), but the court need not seek guidance from that doctrine, because the Sentencing Commission provided guidance sufficient for this case:

In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of a jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in es-

tablishing the defendant's offense level under this guideline.

U.S.S.G. § 1B1.3, Application Note 1. Mr. Sergio contributed money for the initial purchase of cocaine from Birnberg, and regularly received, directly from Gallagher and Cordischi, quantities ranging from one-quarter ounce to one ounce from the shipments Gallagher and Cordischi received from Birnberg. All shipments from Birnberg were in furtherance of the conspiracy and were reasonably foreseeable to Mr. Sergio. Accordingly, under U.S.S.G. § 1B1.3, all such quantities are to be considered in determining the offense level.

One hundred ounces of cocaine is the equivalent of 2,835 grams. The offense level for at least 2,000, but less than 3,500 grams of cocaine is 28. U.S.S.G. § 2D1.1(c)(8).

### B. Adjustments to Offense Level; Obstruction of Justice

■ The only potential adjustment to the base offense level is that provided by U.S.S.G. § 3C1.1: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." The government contends that this provision applies to Mr. Sergio, who, the government argues, presented the false trial testimony of five witnesses and continues to deny his guilt in the presentence report. The government concedes that it has no direct evidence that Mr. Sergio asked those witnesses to lie, but argues that Mr. Sergio knew that the witnesses' testimony was false, and that the surrounding circumstances strongly support the conclusion that Mr. Sergio influenced those witnesses.

### 1.

In *United States v. Holland*, 884 F.2d 354 (8th Cir.), *cert. denied* — U.S. —, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989), enhancement was upheld when the defendant asked a co-defendant not to mention other individuals' involvement when being interviewed by authorities. In *United States v.*

*Pierce*, 893 F.2d 669, 677 (5th Cir.1990), the defendant asked a person how much money it would take to get her to testify in a specified way. The government has no evidence that Mr. Sergio made such direct requests to his witnesses. The government bears the burden of proof by a preponderance of the evidence on this claimed enhancement of the offense level. *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir.1989); *United States v. Burke*, 888 F.2d 862 (D.C.Cir.1989).

Section 3C1.1 is intended to encompass more than the traditional meaning of obstruction of justice. *United States v. Werlinger*, 894 F.2d 1015, 1016–1017 (8th Cir. 1990). Application Note 1(c) to U.S.S.G. § 3C1.1 indicates that suborning untruthful testimony concerning an untruthful fact may provide a basis for enhancement. Accordingly, there may be cases in which a defendant's passive conduct may warrant enhancement.

■ Application Note 2, however, provides further that suspect testimony should be viewed in the light most favorable to the defendant. Finally, U.S.S.G. § 3C1.1 requires that the government show that the defendant acted consciously with the purpose of obstructing justice. *United States v. Stroud*, 893 F.2d 504 (2nd Cir.1990). Under the circumstances of this case, the court simply cannot find, when viewing the defense witnesses' testimony in the light most favorable to Mr. Sergio, that the government has proven by a preponderance of the evidence that Mr. Sergio willfully attempted to impede or obstruct justice by presenting that testimony.

### 2.

■ The second prong of the government's obstruction argument relates to Mr. Sergio's statement to the probation officer, in which he continues to deny his guilt. Cases decided under the Guidelines establish that a defendant's material statements to a probation officer can support an enhancement for obstruction of justice. *United States v. O'Meara*, 895 F.2d 1216, 1220 (8th Cir.1990) (false statements about co-defendant's knowledge); *United States*

*v. Baker*, 894 F.2d 1083 (9th Cir.1990) (false statements about criminal record); *United States v. Christman*, 894 F.2d 339 (9th Cir.1990) (false statement about prior conviction); *United States v. Mayard*, 891 F.2d 530 (5th Cir.1989) (false statement concerning relationship to alleged co-dealer); *United States v. Jordan*, 890 F.2d 968 (7th Cir.1989) (false statement about continued cocaine use). Further, while a defendant has a constitutional right to plead not guilty, he has no right to testify falsely at trial. *United States v. Acosta–Cazares*, 878 F.2d 945 (6th Cir.), *cert. denied* ——— U.S. ———, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

Mr. Sergio, however, did not testify at trial, and his post-verdict statement to the probation officer hardly can be viewed as likely to impede or obstruct justice. Even had Mr. Sergio convinced the probation officer of his innocence, nothing would have changed. While the court cannot, in light of the jury's verdict and the evidence presented at trial, accept Mr. Sergio's statement to the probation officer as true, neither can the court find, by a preponderance of the evidence, that his was a willful attempt to mislead or to obstruct justice.

3.

No adjustment to the offense level is appropriate. Mr. Sergio's offense level remains at 28.

### C. Determination of the Sentencing Range; Departure

 Mr. Sergio's criminal history category is I; he has no prior adult record. An offender in category I at offense level 28 faces a guideline sentencing range of seventy-eight to ninety-seven months. Probation is rendered impermissible both by statute, 18 U.S.C. § 3561(a)(1), and the Guidelines, U.S.S.G. § 5B1.1(a)(2).

In an argument related to his attack on the base offense level, Mr. Sergio contends that the sentence should not create a disparity with sentences meted out to his co-conspirators. Specifically, he notes that Birnberg, who handled all of the cocaine upon which Mr. Sergio's offense level is based, received a sentence of fifty-one months, more than a third below the bottom of the range for Mr. Sergio, who was shown to have handled only about one-ninth of the cocaine involved.[1]

Courts have resolutely rejected frequent defense arguments that the Guidelines deprive defendants of a due process right to individualized sentencing. *United States v. Lewis*, 896 F.2d 246 (7th Cir.1990); *United States v. Tholl*, 895 F.2d 1178, 1180–81 (7th Cir., 1990). Mr. Sergio presents an inverse argument. He contends that he must be treated like similarly-situated confederates, or at least receive no greater sentence than more culpable co-defendants.

The argument seems to have little merit in light of the Guidelines and their purpose. Before the Guidelines, disparity between co-defendants' sentences did not constitute an abuse of sentencing discretion, as long as the sentencing judge gave meaningful consideration to the sentences imposed. *United States v. Neyens*, 831 F.2d 156, 159 (7th Cir.1987). Elimination of sentencing disparity between like offenders was among the purposes of the Sentencing Reform Act. Breyer, *The Federal Sentencing Guidelines and the Key Compromises on Which They Rest*, 17 Hofstra L.Rev. 1, 4–5 (1988). Under the Sentencing Guidelines produced by the Sentencing Reform Act, a court may depart from the Guidelines only on the basis of a circumstance not adequately taken into account by the Sentencing Commission. *United States v. Carey*, 895 F.2d 318 (7th Cir.1990); *United*

---

**1.** Steven Birnberg received a sentence of fifty-one months, followed by three years supervised release. Andrew Cordischi received a sentence of thirty months and three years supervised release. Scott Gallagher received a ten-year state sentence; he will be eligible for release after five years under Indiana's good time provisions.

Jack Bradell received a twenty-seven month sentence with two years supervised release. John Wright received a thirty-three month sentence concurrent with his twelve year state sentence. Christopher Riewe, Mr. Sergio's co-defendant in this indictment, pleaded guilty to a non-Guidelines count and received a sentence of five years (with eligibility for parole after one-third) and four years supervised release.

*States v. Jordan*, 890 F.2d 968 (7th Cir. 1989); *United States v. Missick*, 875 F.2d 1294 (7th Cir.1989). It is difficult to conclude that the Sentencing Commission inadequately considered one of the principal purposes of its creation.

The court's research has disclosed no case in which a co-defendant's sentence was approved as a basis for departure from the guideline range. *See United States v. McKenley*, 895 F.2d 184, 187–188 (4th Cir. 1990) ("The district judge, it is true, was of the view that it would have been unjust for defendant to receive a lesser sentence than his codefendant, a result the Guidelines would require absent a departure. It is also true that it would have been error for the district judge to depart upwards for this reason. By itself, it is not a valid ground for departure."); *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir. 1989) (court departed on other grounds, then imposed same sentence as co-defendant convicted of more counts: "A defendant cannot rely on his co-defendant's sentence as a yardstick for his own."). This court declines to become the first; the law is to the contrary.

Even if unjustifiable sentencing disparity were grounds for departure, the court would decline to depart here. Mr. Sergio's confederates' lesser sentences are easily explicable by Guidelines provisions and general sentencing provisions:

1. Mr. Sergio's confederates offense levels were circumscribed by U.S.S.G. § 1B1.8, which limits the use of a defendant's statements at sentencing; Mr. Sergio's conviction and offense level are not grounded upon his own statements.

2. Mr. Sergio's confederates were eligible for two-level reductions of their offense level for acceptance of responsibility. U.S.S.G. § 3E1.1. Mr. Sergio, who continues to deny his guilt, makes no pretense of entitlement to that reduction.

3. In the case of Mr. Sergio's most culpable confederate, Birnberg, the government moved for a downward departure based on Birnberg's substantial assistance to authorities. U.S.S.G. § 5K1.1. Again, Mr. Sergio makes no claim for a similar motion.

Accordingly, the court concludes that departure based on sentencing disparity is neither permitted by law nor otherwise warranted under the facts of this case.

No other ground for departure has been argued, but the several letters sent in support of Mr. Sergio suggest an additional ground. It seems unquestioned that Mr. Sergio's involvement in this conspiracy was born of his dependency to cocaine. Since the inception of this prosecution, Mr. Sergio has overcome that dependency. Before the advent of the Guidelines, courts occasionally imposed lesser sentences when offenders' conduct was attributable to substance abuse, on the theory that if the substance abuse problem could be addressed, the offender would pose little risk to society.

The Sentencing Commission considered this approach and rejected it. Finding a high correlation between drug dependency and future criminal conduct, the Commission stated that drug dependency ordinarily is not a basis for imposition of a sentence below the Guideline range. U.S.S.G. § 5H1.4; *United States v. Williams*, 891 F.2d 962, 965 (1st Cir.1990). Given that provision, a downward departure for success in overcoming a drug dependency—the basis for earlier more lenient sentences for those with substance abuse problems—can provide a basis for downward departure only in unusual cases. *See also United States v. Van Dyke*, 895 F.2d 984 (4th Cir.1990) (post-arrest participation in jail drug abuse treatment program and counseling of other inmates about drug abuse not grounds for downward departure because Sentencing Commission adequately considered post-arrest conduct in § 3E1.1 on acceptance of responsibility). The court cannot find that Mr. Sergio's is an unusual case.

No ground exists for departure from the Guideline range. Mr. Sergio's sentencing range is seventy-eight to ninety-seven months.

## III. SENTENCING DECISION

The quantity of cocaine involved in this conspiracy falls squarely in the middle of

the quantity range for Mr. Sergio's offense level. Accordingly, absent some basis for imposing a sentence at the outer limits of the sentencing range for that offense level, a sentence at the mid-point of the range seems appropriate. Mr. Sergio's personal efforts at drug rehabilitation present the best basis for a sentence below the mid-point range, but, although those efforts are to be commended, it does not appear that Mr. Sergio sought treatment until four weeks after his indictment. The court believes that a sentence near the mid-point of the sentencing range is appropriate. As noted above, Mr. Sergio is not eligible for probation.

The court must impose a period supervised release of at least three, and not more than five, years to follow Mr. Sergio's sentence. U.S.S.G. § 5D3.2(a). The record contains no suggestion that a period in excess of that three-year minimum is necessary.

Mr. Sergio also faces a fine of not less than $12,500.00 nor more than $2,000,-000.00, plus an additional amount sufficient to pay the government's costs of his imprisonment and supervised release. U.S.S.G. § 5E4.2(i). Mr. Sergio is young, with limited assets and employment history. He is unable to pay a fine.

Accordingly, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that on Counts 1, 2, 3, 4, 6, 7, 9, 10, 12, 13, 15, 17, 19, 21, and 24 of the indictment the defendant, Jeffrey Sergio, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of eighty-seven (87) months. The sentences on these counts shall be served concurrently.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three (3) years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in U.S.S.G. § 5B1.4(a), and shall comply with the following additional conditions:

(1) the defendant shall not possess a firearm or other dangerous weapon during the period of supervised release;

(2) the defendant shall participate in a program for the treatment of drug and/or alcohol dependency, which may include urine testing, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer; and

(3) the defendant shall perform ten hours of community service per month as directed by the probation officer.

Because the defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the Sentencing Guidelines, the court imposes no fine, but imposes the foregoing requirement of community service while on supervised release as an alternative sanction pursuant to U.S.S.G. § 5E1.2(f).

It is further ordered that the defendant shall pay to the United States a special assessment of $50.00 on each count, for a total of $750.00, which shall be due immediately.