**UNITED STATES of America**

v.

**Truman TOLSON.**

**No. SCr. 90–47(11).**

United States District Court,
N.D. Indiana,
South Bend Division.

March 14, 1991.

William Grimmer, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Anthony Kowals, South Bend, Ind., for defendant.

## FINDINGS AND CONCLUSIONS WITH RESPECT TO SENTENCING

MILLER, District Judge.

This case presents several novel issues under the Sentencing Guidelines, including the extent to which a conspiracy defendant may be held responsible for drug quantities distributed by co-conspirators, the availability of "remorse points" for a defendant who pleaded guilty on the eve of a two-

week trial, and the conduct necessary to deem a defendant to have "committed" an offense while on probation. Evidence and argument on these issues was presented on March 13, 1991, and disposition was set for the following day.

On the morning his trial was scheduled to begin, Truman Tolson pleaded guilty to participating in an extensive conspiracy to distribute, and to possess with intent to distribute, cocaine. 21 U.S.C. § 846. Mr. Tolson agreed to cooperate with investigators, and the government agreed to bring no further known charges and to dismiss five counts of interstate travel in aid of marijuana distribution, 18 U.S.C. § 1952(a)(3). Because the conspiracy extended beyond November 1, 1987, the United States Sentencing Guidelines ("U.S.S.G.") promulgated pursuant to the Sentencing Reform Act of 1984 govern this sentencing. *United States v. Masters*, 924 F.2d 1362, 1368–1369 (7th Cir.1991); *United States v. McKenzie*, 922 F.2d 1323, 1328 (7th Cir.1991).

A presentence report was prepared and the parties were given the opportunity to object to its contents. Mr. Tolson objected to those paragraphs of the report that addressed the quantity of marijuana to be considered in determining the offense level (¶¶ 11, 12, 17, 20 and 26), his entitlement to a reduction in offense level for acceptance of responsibility (¶ 25), whether additional criminal history points should be assessed due to probationary status at the time of the offense (¶ 36), and to potential bases for upward departure (¶¶ 68–72). The court resolves those disputes below. The court adopts as its own findings the factual content of ¶¶ 1–10, 13–16, 18–19, 21–24, 26–35, 37–67, and 73 of the presentence report, to the extent they do not depend upon calculations arising from the disputed paragraphs.

## I.

■ Mr. Tolson pleaded guilty to conspiracy to distribute, and to possess with intent to distribute, marijuana. To determine the base offense level for a conspiracy, U.S.S.G. § 2X1.1(a) refers the court to the guideline for the object offense. U.S.S.G. § 2D1.1(a)(3), which governs possession with intent to distribute, refers the court to the drug quantity table set forth in U.S.S.G. § 2D1.1(c). The government contends that Mr. Tolson and his co-conspirators caused approximately 3,000 to 4,000 pounds of marijuana to be transported from Indiana to New York between May and December, 1988, and seeks to hold Mr. Tolson responsible for that amount. That quantity equates to 1,360 to 1,814 kilograms, the offense level for which would be 32. U.S.S.G. § 2D1.1(c)(6). Mr. Tolson contends that his offense level should be established solely with reference to the marijuana he helped load and transfer, which amounts to 364 pounds or 165 kilograms, the offense level for which would be 26. U.S.S.G. § 2D1.1(c)(9).

U.S.S.G. § 2D1.4 provides that "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." The commentary to § 2D1.4 provides that "[i]f the defendant is convicted of conspiracy that includes transactions in controlled substances in addition to those that are the subject of the substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale." U.S.S.G. § 2D1.4, comment 1. Further, the commentary permits the approximation of unseized quantities of drugs. *United States v. Cagle*, 922 F.2d 404, 407 (7th Cir.1991). U.S.S.G. §§ 1B1.3(a)(2) and 3D1.2(d) require cumulation of quantities of drugs that were part of the same course of conduct or common scheme or plan as the offense of conviction. *United States v. Rodriguez–Nuez*, 919 F.2d 461, 464 (7th Cir.1990); *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989); *United States v. White*, 888 F.2d 490 (7th Cir.1989). The test is not whether the defendant participated in all acts or even knew of them, but rather whether the conspirators' acts were reasonably foreseeable. *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989);

see also *United States v. Guerrero*, 894 F.2d 261, 265–267 (7th Cir.1990); *United States v. Sergio*, 734 F.Supp. 842, 845–846 (N.D.Ind.1990).

■ In an uncompleted transaction, the weight under negotiation is to be used in computing the offense level, although if the defendant was reasonably incapable of producing the negotiated amount, downward departure is permissible. *United States v. Franco*, 909 F.2d 1042, 1045–1046 (7th Cir.1990); *United States v. Buggs*, 904 F.2d 1070, 1079 (7th Cir.1990); U.S.S.G. § 2D1.4, application note 1.

■ Facts necessary to establish the offense level, like all facts pertinent to the sentencing guidelines, must be established by a preponderance of the evidence. *United States v. Hassan*, 927 F.2d 303, 308 (7th Cir.1991); *United States v. Ebbole*, 917 F.2d 1495, 1496–1497 n. 4 (7th Cir.1990), but that showing may be based on hearsay evidence. *United States v. Escobar–Mejia*, 915 F.2d 1152, 1154 (7th Cir.1990).

With these principles in mind, the court turns to the facts demonstrated in this case.

### A.

■ The conspiracy in the case is alleged to have existed from 1986 to early 1989. The Rector family was heavily involved in the harvesting, transportation and sale of "ditchweed", a low-grade marijuana plant native to northwest Indiana useful as "filler" for higher quality marijuana. Until his federal indictment in May, 1988, Doug Rector ran the operation, which included the harvesting of marijuana in Indiana and transporting it to New York and Florida. After Doug Rector's indictment, Rex Froedge took over the operation, although the Rector family (brothers Ron, Tim, Doug and Scott and father Joe) apparently continued their involvement from jail.

In August, 1988, Mike Rector escaped from the Indiana State Prison, where he had been serving a fourteen-year sentence for drug dealing. He took up with Froedge, and developed a partnership to harvest and ship marijuana to Ainsley Richards in New York. Among the people they retained to drive marijuana to New York was Robert Potts, who had the misfortune of being arrested in Ohio with 115 pounds of marijuana in his vehicle on October 9, 1988. After Potts' arrest, Mike Rector spoke with his brother Doug, who advised Mike to call Darrell Tolson, defendant Truman Tolson's son, for more marijuana. Mike Rector called Darrell Tolson in late October and arranged for Darrell Tolson to "front" marijuana for delivery to Richards. Darrell Tolson told Mike Rector he had "five or six tons" of marijuana he could move, but he did not produce such an amount, and the government concedes it has no witness that ever saw such an amount.

Deliveries were made to Mike Rector in late October and November, 1988; Truman Tolson participated in some or all of those deliveries with Darrell Tolson, helping to load cars and drive.

The government contends that overall, the conspiracy handled about 18,500 pounds of marijuana, but does not seek to hold Truman Tolson responsible for that amount. The government seeks an offense level based on the 3,000 to 4,000 pounds that were delivered to Richards in New York between May, 1988 (when Froedge took over, later joined by Mike Rector) and December 5, 1988 (when Mike Rector was apprehended). Although quantities under negotiation properly may be considered absent a showing that the defendant was unable to produce the negotiated quantity, *see, e.g., United States v. Candito*, 892 F.2d 182, 186 (2nd Cir.1989), the government concedes that the five to six tons of which Darrell Tolson spoke were not truly under negotiation.

Mr. Tolson maintains that his involvement was even more limited than that. He says that he merely assisted Darrell Tolson on three or four occasions, handling only 364 pounds by Mike Rector's statement. He contends his offense level should be based on no more.

To aid in the issue's resolution, the court turns to *United States v. Townsend*, 924 F.2d 1385 (7th Cir.1991), which reminded

the courts and bar that to prove membership in a broader drug conspiracy, it must be shown that the participants to a transaction had an interest in the deal's success beyond the immediate, single transaction. Knowledge that another participant has other, more extensive drug dealings does not suffice to make one a member of a broader conspiracy. The commitment must extend beyond one deal to the next. Because Mr. Tolson's guilt of the conspiracy charge is not in issue, *Townsend* is not directly on point. To determine the offense level, however, the court must evaluate the extent of Mr. Tolson's agreement to distribute drugs; on this point, *Townsend* lends considerable guidance.

### B.

Reference to *Townsend* leads the court to reject Mr. Tolson's contention that his offense level can be based on no more than the events in which he was involved personally. Mr. Tolson agreed with his son, Darrell, to assist in the distribution of ditchweed. Mr. Tolson denied knowledge of Mike Rector's identity or the ultimate destination of the marijuana he loaded, but one need not know all conspirators' names or the details of their tasks to join a conspiracy. Mr. Tolson worked with Darrell in a series of transactions, and a series plainly was contemplated. Darrell may only have been "puffing" when he spoke of having five or six tons available, but such puffing seems unlikely if he sought only a single buyer-seller agreement. Mr. Tolson participated in at least three transactions between Darrell and Mike Rector; it is reasonable to conclude he knew of the intended continuing nature of the relationship.

The nature of the relationship between the Tolsons and Mike Rector indicates that, as with defendant Mejia in *Townsend*, 924 F.2d at 1405–06, each had a stake in the other's activities and was committed to maintaining their successful business relationship. It was reasonably foreseeable to Truman Tolson that Darrell Tolson and Mike Rector would have further dealings, and that Mike Rector would have further dealings with others, beyond those in which Truman Tolson was a direct participant.

Accordingly, the quantities of marijuana handled by the conspiracy while Mike Rector was involved must be considered in determining the offense level. U.S.S.G. § 2D1.4, comment 1; *United States v. Cagle*, 922 F.2d at 407.

Mr. Tolson's reliance on U.S.S.G. § 1B1.3, application note 1(e), is unpersuasive. That note speaks of a defendant hired by conspirators on a single occasion to unload a shipment of drugs. Mr. Tolson was not hired on a single occasion (though he may have been paid but once). He participated three times, rendering it reasonably foreseeable that Darrell Tolson and the person Mr. Tolson later learned to be Mike Rector might have further transactions, to which he might not be invited.

The government reported that between August 2, 1988 and December 5, 1988—the period in which Mike Rector was involved—the conspiracy handled between 500 and 2,000 pounds of marijuana. That marijuana must be considered in determining Mr. Tolson's offense level.

### C.

The government seeks more, however. While it does not seek to attribute to Mr. Tolson the 18,500 pounds handled by the conspiracy from 1986 to 1989, it seeks to attribute the quantities distributed during the Froedge regime, after Doug Rector's indictment and before Mike Rector's escape—an additional 1,000 to 3,500 pounds. If Truman Tolson has not been shown to have had any participation in, or involvement with, the conspiracy before Mike Rector joined, the court cannot agree that those quantities can be considered. Mr. Tolson did not agree that anything should be done between May and August, 1988; he did not further any activity between May and August; he could not foresee any activity between May and August. In *United States v. Guerrero*, 894 F.2d 261, 266 (7th Cir.1990), the court stated that "a defendant who pleads guilty to a conspiracy charge is held accountable, for purposes of determining his relevant conduct and the applicable guideline range, for all

drug transactions that he was aware of or that he should have reasonably foreseen," but found it proper to consider only the amounts distributed during the period of the defendant's involvement.

The record, however, does not indicate that Truman Tolson made his debut in the conspiracy in November, 1988. In the fall of 1986, Mr. Tolson accompanied his son and another, in two cars, to the Miami, Florida, area, where Doug Rector was to pay Darrell Tolson a sum of $10,000 for an unspecified quantity of marijuana. Mr. Tolson denies that he knew drug activity was afoot; he says that Darrell said nothing to him of the deal and he saw no marijuana. He concedes, however, that the payment was offered to him when Darrell was out of the room, and that while Darrell had said the payment was supposed to be $10,000, Rector paid only $9,000. The court simply finds Mr. Tolson's denial of awareness or participation to be incredible.

If Mr. Tolson's participation in the conspiracy dates to the fall of 1986, then, how is a sentencing court to parse the 18,500 pounds which, according to unrebutted evidence, the conspiracy distributed? What little direction the guidelines provide suggests that the offense level should include everything handled from the fall of 1986 forward. Mr. Tolson never withdrew from the conspiracy, and all transactions after he joined were in furtherance of the conspiracy; hence he would be criminally responsible for those transactions under the doctrine of *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), to which courts have looked in determining the scope of the guidelines' "relevant conduct" provisions. *See, e.g., United States v. LaFraugh,* 893 F.2d 314, 317 (11th Cir.1990); *United States v. Missick,* 875 F.2d 1294, 1301–1302 (7th Cir.1989).

To hold a defendant responsible for 18,500 pounds of marijuana, distributed over a three-year span, based on four incidents of non-supervisory participation, however, seems too harsh a result to attribute to the intent of the Sentencing Commission. Application Note 1 to U.S.S.G. § 2D1.4 refers to U.S.S.G. § 1B1.3; application note 1 to § 1B1.3 appears to attempt to limit the reach of the rule:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a conspiracy may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant.

Accordingly, the court does not believe that inclusion of the entire three-year, 18,500 pound work of the conspiracy would be within the intent of the guidelines. Where, then, should the line be drawn? Like the devising of a hypothetical organizational chart to demonstrate the existence of a conspiracy, *United States v. Townsend,* 924 F.2d at 1391, any demarcation is artificial; reasonable minds may differ as to how much "relevant conduct" to apply in a case such as this.

The government's proposed solution seems reasonable and, indeed, fair to the defense. The government does not seek to hold Mr. Tolson liable for all 18,500 pounds, although his participation in 1986 arguably would provide legal support for such a position. The 1986 participation, however, warrants inclusion of more than the ton or less handled under the stewardship of Mike Rector. The government's proposed solution—to include the quantities distributed under Mike Rector and/or his partner, Froedge—is appealing. Although concededly arbitrary, this approach recognizes that something more than the Mike Rector era should be considered, and that when Mr. Tolson returned to active status within the conspiracy, he rejoined a healthy, ongoing conspiracy that had, under Froedge's stewardship, survived Doug Rector's incapacitation. This approach tempers the inclination to assess all acts against Mr. Tol-

son with recognition that he was not a new initiate when he participated in November, 1988; no other approach serves both ends.

### D.

Accordingly, the court finds that under U.S.S.G. §§ 1B1.3 and 2D1.4, 3,000 to 4,000 pounds, or 1,360 to 1,814 kilograms, of marijuana are to be considered in determining Mr. Tolson's offense level, producing an offense level of 32.

### II.

■ Mr. Tolson contends that he is entitled to a two-level reduction in his offense level for clear demonstration of personal responsibility for his involvement in the offense of conviction under U.S.S.G. § 3E1.1(a). Mr. Tolson pleaded guilty on the day scheduled for commencement of his trial. As part of that plea agreement, he promised to cooperate with the government, testifying if necessary. Mr. Tolson bears the burden of demonstrating his entitlement to this reduction. *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir. 1990).

■ The fact of a guilty plea does not alone entitle a defendant to a reduction in offense level for acceptance of responsibility. U.S.S.G. § 3E1.1(c); *United States v. Ojo*, 916 F.2d 388, 393 (7th Cir.1990). The timeliness of a defendant's guilty plea is a pertinent, although not necessarily controlling, consideration. *United States v. Franklin*, 902 F.2d 501, 505–506, 510 (7th Cir.1990).

■ In deciding a claim for "remorse points", *United States v. Jordan*, 890 F.2d 968, 974 (7th Cir.1989), sentencing courts are to address the factors set forth in application Note 1 to U.S.S.G. § 3E1.1. *United States v. Sullivan*, 916 F.2d 417, 420–421 (7th Cir.1990). Those factors are:

*a. Voluntary termination or withdrawal from criminal conduct or associations.* Mr. Tolson can claim no voluntary withdrawal; he has been in custody since his arrest.

*b. Voluntary payment of restitution prior to adjudication of guilt.* This factor is inapplicable; no restitution is at issue.

*c. Voluntary and truthful admission to authorities of involvement in the offense and related conduct.* Mr. Tolson agreed to do this as part of his agreement, and there is no indication that he has not done so.

*d. Voluntary surrender to authorities promptly after commission of the offense.* Mr. Tolson did not do this.

*e. Voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense.* Mr. Tolson did not do this, but there is no indication that fruits and instrumentalities exist to be recovered.

*f. Voluntary resignation from the office or position held during the commission of the offense.* Mr. Tolson held no office or position from which to resign.

*g. The timeliness of the defendant's conduct in manifesting the acceptance of responsibility.* Mr. Tolson made his first court appearance on September 24, 1990, and did not come forth with his offer to plead guilty and cooperate until January 2, 1991, the day scheduled for trial. While his efforts were more timely than some, *see, e.g., United States v. Atterson*, 926 F.2d 649 (7th Cir.1991); *United States v. Fonner*, 920 F.2d 1330 (7th Cir.1990), they were more tardy than others who were denied the reduction. *United States v. Franklin*, 902 F.2d 501. His attorney explains that discovery in the case was both bulky and (although through no fault of the government) untimely, and that until all the discovery had been reviewed, no decision could be made with respect to pleading guilty. Mr. Tolson's limited education and literacy slowed review of the discovery materials.

A trial date guilty plea may be as demonstrative of a belief that the proof has arrived as of an acceptance of responsibility, *United States v. Franklin*, 902 F.2d at 505–506, 510, and frequently will be unconvincing. Here, as the reason for the plea's untimeliness, Mr. Tolson points to exten-

sive, late-breaking discovery that had to be reviewed with, and indeed read to, him. Acceptance of responsibility, however, is not an act dependent on the strength or quality of the government's case. It is proper for defense counsel to wish to review the government's case through discovery before advising a defendant whether to proceed to trial, but it is the defendant himself who must accept personal responsibility. Mr. Tolson finally did so, but he did so in a fashion too untimely to constitute the clear demonstration required by U.S.S.G. § 3E1.1.

■ Based on the foregoing, the court concludes that Mr. Tolson has not shown, by a preponderance of the evidence, that he has clearly demonstrated personal acceptance of responsibility for his offense of conviction. He has made some showing of acceptance of responsibility, but that acceptance is less than clear, and so may be considered only in selecting the offense level. His offense level remains at 32.

No other adjustments to the offense level are appropriate.

### III.

The parties agree that at least five criminal history points should be assessed against Mr. Tolson. Two points are assessed for his 1989 state felony conviction for possession of more than thirty grams of marijuana, for which he was sentenced to two years' imprisonment, eighteen months of which was suspended. U.S.S.G. § 4A1.1(b). One point is assessed for his 1985 state felony conviction for driving while intoxicated, for which he received a suspended two year sentence, and was placed on probation for two years. U.S.S.G. § 4A1.1(c). One point is assessed for his 1982 state misdemeanor conviction, for which he was fined and placed on a year's informal probation. U.S.S.G. § 4A1.1(c). One point is assessed for his 1979 state misdemeanor conviction, for which he was fined. U.S.S.G. § 4A1.1(c). Mr. Tolson has other criminal convictions, which are discussed in the next section.

U.S.S.G. § 4A1.1(d) provides that two additional criminal history points are to be assessed if the defendant committed the offense while on probation on any other sentence. The government contends that this enhancement applies, while Mr. Tolson objects to its application.

The findings set forth with respect to the offense level resolve this issue. Mr. Tolson participated in the conspiracy in the fall of 1986 in Miami, Florida. He was on probation then. Two additional criminal history points are to be assessed under U.S.S.G. § 4A1.1(d), placing him in Criminal History Category IV with seven points.

### IV.

Mr. Tolson has other criminal convictions, but no criminal history points may be assessed for those convictions. Accordingly, as an offender in Criminal History Category 32 and at offense level IV, Mr. Tolson faces a sentencing guideline range of 168 to 210 months' imprisonment. U.S.S.G. Ch. 5, Part A. He is ineligible for probation by statute, 18 U.S.C. § 3561(a)(1), and by guideline, U.S.S.G. § 5B1.1(b)(1). He also faces a period of supervised release of five years. U.S.S.G. § 5D1.2(a). It remains to determine whether grounds exist for departure from the guideline range.

### A.

U.S.S.G. § 4A1.2 limits the convictions that a sentencing court may consider in determining a defendant's guideline range. Application note 8 to that section provides, "If the government is able to show that a sentence imposed outside this time period is evidence of similar misconduct or the defendant's receipt of a substantial portion of income from criminal livelihood, the court may consider this information in determining whether to depart and sentence above the applicable guideline range." Mr. Tolson has several prior convictions—gambling (1965), conspiracy to commit prostitution (1971), and keeping a gaming house (1971)—that are too old and too minor to be considered for sentencing purposes in 1991.

■ In February, 1975, however, Mr. Tolson was convicted in this court of possession with intent to distribute marijuana.

He was sentenced to three years' imprisonment, with all but six months suspended, and received an early release from probation on August 17, 1976. Because the executed portion of Mr. Tolson's sentence did not exceed twelve months and sentence was imposed more than ten years before commission of this offense, no criminal history points are assessed. U.S.S.G. § 4A1.2(e). Had the conviction been imposed a year and a half later, two additional criminal history points would have been assessed. Those additional points, however, would have left Mr. Tolson in criminal history category IV, which encompasses offenders with seven to nine points. The guidelines' failure to count a conviction which, if counted, would not affect the sentencing range is no basis for departure. *See United States v. Fonner*, 920 F.2d at 1332 ("a defendant's past cannot justify an increase in criminal history category exceeding the level that would have been appropriate had the facts been counted expressly.").

### B.

The presentence report also sets forth a basis from which it could be concluded that Mr. Tolson derived a substantial portion of his income from his criminal livelihood, which also could warrant an upward departure under U.S.S.G. § 4A1.2, application note 8. The presentence report indicates that Mr. Tolson has not been employed since the 1980's, and he has earned money from the marijuana business since then, including through the conspiracy charged in this case. It follows that drug income must have been a substantial portion of what Mr. Tolson earned during this conspiracy.

Mr. Tolson argues that unless some substantial criminal income level is used as a "floor", this guidelines provision will discriminate against poorer defendants: a $3,000.00 transaction is a "substantial portion" of an unemployed defendant's income, but is of little consequence to the well-to-do defendant. Similar arguments were directed at an earlier version of U.S.S.G. § 4B1.3, producing a fairly even division of authority. Compare *United States v. Luster*, 889 F.2d 1523 (6th Cir.1989); *United States v. Munster–Ramirez*, 888 F.2d 1267 (9th Cir.1989); *United States v. Kerr*, 686 F.Supp. 1174 (W.D.Pa.1988), with *United States v. Cianscewski*, 894 F.2d 74 (3rd Cir.1990); *United States v. Nolder*, 887 F.2d 140 (8th Cir.1989); *United States v. Rivera*, 694 F.Supp. 1105 (S.D.N.Y.1988). U.S.S.G. § 4B1.3 was amended to tie the definition of "substantial portion of his income" to a formula based on the minimum wage, but the original concept remains in the application note to § 4A1.3.

The court need not resolve this issue; even if it is assumed that the $3,000 Mr. Tolson received in November, 1988 was his sole income for the month, or even the year, the court would not depart upward, due to the considerations Mr. Tolson raises in support of his request for downward departure.

### C.

 Mr. Tolson, in turn, contends that bases exist for a downward departure: he points to his health, his age, and his asserted minimal involvement in the conspiracy. A sentencing court must impose a sentence of the kind and within the range established by the Sentencing Commission unless the court finds an aggravating or mitigating circumstance of a kind or to a degree not adequately considered by the Commission in formulating the guidelines. *United States v. Missick*, 875 F.2d at 1300; 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Determination of whether the Commission adequately considered a circumstance may be resolved only by reference to the guidelines, policy statements and official commentary. *United States v. Carey*, 895 F.2d 318, 322 (7th Cir.1990).

### 1.

 Mr. Tolson is sixty years old. He suffers from several physical problems, including onychomycosis of his fingernails and toenails, peripheral neuropathy of unknown etiology, syncopal episodes which may be vasovagal in nature, circulatory problems, arthritis, and emphysema.

The Sentencing Commission addressed the issues of age and health through policy statements. U.S.S.G. § 5H1.1 provides:

Age is not ordinarily relevant in determining whether a sentence should be outside the guidelines. Neither is it ordinarily relevant in determining the type of sentence to be imposed when the guidelines provide sentencing options. Age may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a form of punishment (*e.g.*, home confinement) might be equally efficient as and less costly than incarceration. If, independent of the consideration of age, a defendant is sentenced to probation or supervised release, age may be relevant in the determination of the length and conditions of supervision.

U.S.S.G. § 5H1.4 provides in part:

Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall. However, an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment.

The Seventh Circuit has made clear that the policy statements are to be applied strictly. In *United States v. Carey*, 895 F.2d 318, the district court had departed downward in imposing a sentence based on the defendant's age of sixty-two and the fact that he had had several operations as a result of a brain tumor. The Seventh Circuit reversed because the district court had not made sufficiently particularized findings:

To base a departure on § 5H1.1, the court must make a finding that Carey was elderly and infirm and that an alternative form of confinement would be equally efficient and less costly than incarceration. Similarly, the court must make a finding that Carey suffers from an extraordinary physical impairment to warrant departure under § 5H1.4. In this case, the court did not make any such findings and instead relied on its summary conclusion that Carey's age and physical condition "allow the court some flexibility in a downward depar-

ture." Without more particularized findings and analysis we cannot conclude that the district court's reliance on Carey's age and physical condition in departing from the applicable sentencing range was reasonable. Again, on remand, the district court is free to make this finding if the facts support it.

895 F.2d at 324.

The court cannot make the necessary findings with respect to Mr. Tolson. Assuming a sixty-year-old man to be elderly, the court cannot find him to be infirm; his physical problems, while extensive, do not appear to disable him in any sense. Without intending to belittle his medical problems, his physical condition cannot be described as an extraordinary physical impairment. Accordingly, U.S.S.G. §§ 5H1.1 and 5H1.4, as interpreted in *Carey*, preclude departure on grounds of age or health.

### 2.

■■■ Finally, Mr. Tolson seeks a downward departure due to the limited extent of his involvement. Again, the Sentencing Commission spoke to that consideration. U.S.S.G. § 3B1.2 provides for a four-level reduction in offense level if the defendant was a minimal participant in any criminal activity, a two-level reduction if the defendant was a minor participant, and a three-level reduction in intermediate cases. This provision precludes a downward departure based on role in the offense.

Nor is Mr. Tolson entitled to a reduction in offense level due to his role in the offense. The four-level reduction is inappropriate. That reduction is intended to be used infrequently, *United States v. Christman*, 894 F.2d 339, 341 (9th Cir.1990), for those whose role in a very large drug conspiracy is peripheral to a single transaction, U.S.S.G. § 3B1.2, application note 2. The two-level reduction also is inappropriate. "Minor participant" status has been denied to persons in analogous positions, such as a drug courier, *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.1990); *United States v. Williams*, 890 F.2d 102 (8th Cir.1989), a person who arranged a transaction without profit to self as a favor to a friend, *United*

*States v. Ellis*, 890 F.2d 1040, 1041 (8th Cir.1989), or a driver, *United States v. Velasquez*, 890 F.2d 717, 720 (5th Cir.1989).

Others, including Darrell Tolson, may have been more culpable than Truman Tolson, but that is not the test for reduction based on role in the offense. *United States v. Miller*, 891 F.2d 1265, 1270–1271 (7th Cir.1989). With respect to the 3,000 to 4,000 pounds on which his offense level was based, Mr. Tolson was not a minor participant. He participated in four transactions; those transactions alone would warrant an offense level of 26 or higher.

Mr. Tolson's role in the offense warrants neither a downward departure nor a reduction in his offense level.

### V.

Mr. Tolson's sentencing range is 168 to 210 months. The parties remain free to argue for any particular sentence within that range based on the various factors discussed in this memorandum, including the quantity of marijuana, and the defendant's near-acceptance of responsibility, criminal record, age, health, and level of participation.